UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LUCILO CABRERA,<br><br>v.<br><br>UNITED STATES OF AMERICA | No. 3:22-cv-293 (SRU) |

### RULING ON PETITION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Lucilo Cabrera ("Cabrera"), proceeding *pro se*, has moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  For the following reasons, Cabrera's motion is **denied**.

I.      **Background**[1]

From approximately June 2014 through May 2017, Cabrera and his codefendants Francisco Betancourt and Carlos Antonio Hernandez executed a scheme by which they tricked undocumented immigrants at the Port Authority in New York City into believing that the immigrants had missed their transportation to Connecticut and/or had arrived at the wrong place. One or more of the defendants would offer to transport the individuals, often accompanied by children, to Connecticut via a purported taxi.[2]  Upon arrival, one or more of the defendants would demand payment from the individual's family members and refuse to release the passenger(s) until the family member paid "taxi fare" of around $1,000 for the trip.  For his role

---

[1] I refer to documents in Cabrera's criminal case, *United States v. Cabrera*, Dkt. No. 3:16-cr-238 (SRU), with the shorthand "Cr. Doc.," and to documents in this case without a shorthand for the case name.

[2] The facts regarding Cabrera's criminal conduct were alleged by the government, introduced at trial, and summarized in my Ruling on Defendants' Motions for Judgment of Acquittal and/or for a New Trial, which was summarily affirmed by the United States Court of Appeals for the Second Circuit.  *See* Cr. Doc. No. 305, *aff'd*, Doc. No. 427 (2d Cir. May 21, 2021).

in the scheme, Cabrera was charged with kidnapping, conspiracy to commit kidnapping, extortion, and conspiracy to commit extortion. Third Superseding Indictment, Cr. Doc. No. 115.

At arraignment, Cabrera entered a plea of not guilty. Minute Entry, Cr. Doc. No. 130. The government later offered Cabrera a plea bargain. Cabrera met with his lawyer, Attorney Gary Mastronardi, to discuss the plea offer on October 22, 2017 and November 27, 2017. Pet., Doc. No. 1, at 5. At those meetings, Attorney Mastronardi allegedly advised Cabrera that the government's evidence was "weak," that Cabrera had a "highly winnable case," and that the government's proposed plea offer recommended a "too high" term of imprisonment. *Id.*

On November 7, 2017, Cabrera appeared before United States Magistrate Judge William I. Garfinkel for a hearing pursuant to *Missouri v. Frye*, 566 U.S. 134 (2012), to address the government's plea offer. Min. Entry, Cr. Doc. No. 93; Frye Hrg. Tr., Cr. Doc. No. 8-1. At that hearing, Judge Garfinkel canvassed Cabrera and confirmed that Cabrera understood the government's plea offer, that Cabrera had an opportunity to discuss the offer with counsel, and that Cabrera was aware of the potential advantages of the plea offer and Cabrera's risk of increased sentencing exposure after trial. Frye Hrg. Tr., Cr. Doc. No. 8-1. Cabrera ultimately declined the offer and proceeded to trial.

On March 9, 2018, after a nine-day trial, a jury convicted Cabrera of conspiracy to commit kidnapping, conspiracy to commit extortion, kidnapping, and extortion (Counts 1, 2, 11, 14, 15, 16, and 17) and acquitted Cabrera on three substantive counts of kidnapping (Counts 10, 12 and 13). Verdict Sheet, Cr. Doc. No. 225. Cabrera's two codefendants at trial, Betancourt and Hernandez, were likewise convicted of two conspiracy counts, all extortion counts, and some kidnapping counts; and they too were acquitted of some kidnapping counts. *Id.*

On March 19, 2018, Cabrera moved for a judgment of acquittal and/or a new trial.  Mot. for J. Acquittal and/or New Trial, Cr. Doc. No. 235.  Cabrera argued that he was entitled to a judgment of acquittal because the government had failed to establish: (1) the "taking" element of kidnapping; (2) the "holding" element of kidnapping; and (3) the "fear" element of extortion.  *See generally id.*  Cabrera argued in the alternative that he was entitled to a new trial because I erroneously failed to give requested charges regarding lesser-included offenses and/or to set forth his theory of the case in the jury instructions.  *See id.*  On June 28, 2019, in a written ruling, I denied Cabrera's motion and the similar motions of Betancourt and Hernandez.  Ruling on Mot. for J. Acquittal and/or New Trial, Cr. Doc. No. 305.  Cabrera nevertheless continued to maintain that he was innocent of the charges against him.  *See* Presentence Investigation Report, Cr. Doc. No. 14 ¶¶ 5, 39-40.

On December 9, 2019, I sentenced Cabrera to 135 months' imprisonment and three years' supervised release.  Minute Entry, Cr. Doc. No. 376.  Thereafter, judgment entered.  Judgment, Minute Entry, Cr. Doc. No. 380.

Cabrera, Betancourt, and Hernandez directly appealed their convictions to the United States Court of Appeals for the Second Circuit, challenging the sufficiency of the evidence at trial and the propriety of the Court's jury instructions.  Notice of Appeal, Cr. Doc. No. 378.  On May 21, 2021, the Second Circuit summarily affirmed the convictions.  Mandate, Cr. Doc. No. 427, *republished at United States v. Betancourt*, 857 F. App'x 33, 33-34 (2d Cir. May 21, 2021).  Cabrera did not seek to challenge the Second Circuit's ruling by filing a petition for certiorari with the United States Supreme Court.

Cabrera is currently confined at Federal Correctional Institution, Beckley ("FCI Beckley).  His scheduled release date is February 17, 2027.  *See Inmate Locator Service*, Fed. Bureau of

Prisons, https://www.bop.gov/inmateloc/ (accessed March 29, 2023); *Vera v. United States*, 2017 WL 3081666, at *3 n.2 (D. Conn. July 19, 2017) (taking judicial notice of the Bureau of Prisons inmate locator).

Cabrera has moved to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. *See generally* Pet., Doc. No. 1. Cabrera now characterizes the government's evidence at trial, its eighteen witnesses and 120 exhibits, as "overwhelming." *Id*. at 5. He claims that trial counsel provided ineffective assistance by failing to properly advise him to accept the government's plea offer, which stipulated to a Guidelines imprisonment range of 70-87 months, resulting in his conviction at trial of counts subject to a higher Guidelines base offense level and a lengthier sentence of 135 months' imprisonment. *Id.*; *see also* Mot. to Amend, Doc. No. 5.[3] Cabrera also asserts that trial counsel provided ineffective assistance by failing to object to the Court's jury instruction on kidnapping and to the sufficiency of the evidence. Pet., Doc. No. 1, at 3. Cabrera further asks the Court to appoint counsel for his motion and to release him while his motion is pending. Doc. No. 6.

The government opposes the section 2255 motion and opposes Cabrera's motion for appointment of counsel and for release. Doc. No. 8.

At the Court's request, the government also supplied an affidavit from Attorney Mastronardi concerning Cabrera's ineffective assistance claims. Docs. No. 11, 11-1. Attorney Mastronardi attests that Cabrera maintained his innocence; that Mastronardi explained the nature of the government's charges and the elements of the offenses charged; that Mastronardi assessed the government's evidence and advised Cabrera that, if he proceeded to trial, that the odds were

---

[3] I grant the motion for leave to amend, doc. no. 5, and consider the arguments set forth in that filing in this ruling.

likely "against him"; and that Cabrera made the decision to reject the government's plea offer and proceed to trial. Doc. No. 11-1.

In a subsequent filing, Cabrera disputes the veracity of the information in counsel's affidavit and swears under penalty of perjury that the assertions in his reply and previous filings are truthful. Doc. No. 12.

## II. Legal Standards

### A. Section 2255 Petition

A section 2255 petition provides a prisoner in federal custody an opportunity to challenge the legality of his or her sentence. To obtain relief under section 2255, a petitioner must show that his prior sentence was invalid because: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum detention authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

The standard is stringent; even constitutional errors will not be redressed through a section 2255 petition unless they have had a "substantial and injurious effect" that results in "actual prejudice" to the petitioner. *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637 (1993) (internal citations omitted); *see also Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999) (applying *Brecht*'s harmless error standard to section 2255 petitions). The petitioner bears the burden of proving that he or she is entitled to relief by a preponderance of the evidence. *Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000).

A petitioner is barred from raising a claim on habeas review that was not properly raised on direct review unless the petitioner is able to show "cause and actual prejudice" or "actual innocence." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (cleaned up). A petitioner may,

5

however, bring a claim of ineffective assistance of counsel that was not raised previously at trial or on appeal. *See Massaro v. United States*, 538 U.S. 500, 504 (2003).

Under section 2255, a petitioner is entitled to a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "Mere generalities or hearsay statements will not normally entitle the applicant to a hearing. . . . The petitioner must set forth specific facts which he is in a position to establish by competent evidence." *Dalli v. United States*, 491 F.2d 758, 760–61 (2d Cir. 1974) (citations omitted). In the absence of supporting facts, the court may resolve a petitioner's claims without a hearing. *See id.* at 760–62.

B. Ineffective Assistance of Counsel

A petitioner asserting ineffective assistance of counsel must establish that (1) counsel's performance was objectively deficient, and (2) that the petitioner was actually prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. With respect to the performance prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct.'" *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690). With respect to the prejudice prong, the petitioner must establish that that there is "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

A petitioner claiming ineffective assistance bears a heavy burden. "If an attorney made a strategic choice after thoughtful consideration, that decision will be 'virtually unchallengeable.'" *United States v. Rosemond*, 958 F.3d 111, 121 (2d Cir. 2020) (quoting *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005)). "[E]ven strategic choices made after less than complete investigation do not amount to ineffective assistance—so long as the known facts made it reasonable to believe that further investigation was unnecessary." *Henry*, 409 F.3d at 63 (citing *Strickland*, 466 U.S. at 690–91). Indeed, courts have "declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox, or downright ill-advised." *Tippins v. Walker*, 77 F.3d 682, 686 (2d Cir. 1996). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter,* 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks omitted).

**III.    Discussion**

Cabrera's petition is principally directed towards two purported failures of his trial counsel. I address each in turn. Because I conclude that Cabrera's arguments are without legal merit and are unsupported by the record, I deny his section 2255 motion.

A.  <u>Rejection of the plea agreement</u>

The plea negotiation phase is one of the critical stages of the criminal proceedings to which the right to assistance of counsel attaches. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). Implicit in the right to counsel is the right to the "'effective assistance of competent counsel.'" *Id.* (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). To succeed on a claim that counsel was ineffective in advising a defendant to reject a plea offer, a petitioner must show

7

> that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 164.[4]

Cabrera asserts that Attorney Mastronardi provided ineffective assistance by failing to advise him of the risks and benefits of the government's plea offer, and by advising him to proceed to trial rather than taking the plea deal offered by the government. Pet., Doc. No. 1, at 3, 5; Mot. to Amend, Doc. No. 5, at 1. As a result of the purportedly ineffective counsel, Cabrera allegedly rejected a more favorable plea offer that would have resulted in a Guidelines sentence of 70-87 months, rather than the 135-months sentence that this Court later imposed. *Id.* at 3-4.

Cabrera's characterizations of Attorney Mastronardi's performance are not supported by the record. But even taking as true Cabrera's representations regarding Attorney Mastronardi's conduct, Cabrera nevertheless fails to carry his burden of proving that Mastronardi's performance fell below an objective standard of reasonableness and that Cabrera was prejudiced as a result.

---

[4] In *Lafler*, the defendant was charged with assault with intent to murder, among other charges, and the prosecutor offered on two separate occasions to dismiss certain of the charges and recommend a lower sentence in exchange for the defendant's willingness to plead guilty. *Lafler*, 566 U.S. at 161. Counsel advised the defendant to reject the offer, maintaining that the prosecution would be unable to establish intent to murder because the victim had been shot below the waist. *Id.* The defendant was ultimately convicted and sentenced to a much higher mandatory minimum sentence than he would have received had he accepted the plea offer. *Id.* The *Lafler* Court ultimately held that the defendant had demonstrated prejudice because "there is a reasonable probability he and the trial court would have accepted the guilty plea. *Id.* at 174. In addition, as a result of not accepting the plea and being convicted at trial, respondent received a minimum sentence 3½ times greater than he would have received under the plea." *Id.*

1. *The performance prong*

When considering whether counsel's representation fell below an objective standard of reasonableness, the Court begins with the understanding that "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690), and that a court must be "highly deferential," make "every effort . . . to eliminate the distorting effects of hindsight," and operate with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689.

In the context of plea bargaining, defense counsel must balance two difficult considerations meriting considerable deference. "On the one hand, defense counsel 'must give the client the benefit of counsel's professional advice on this crucial decision' of whether to plead guilty." *Purdy v. United States*, 208 F.3d 41, 44 (2d Cir. 2000) (quoting *Boria v. Keane*, 99 F.3d 492, 497 (2d Cir. 1996)). The advice must include the terms of the plea offer and "should usually" include "the strengths and weaknesses of the case against [the client], as well as the alternative sentences to which [the client] will most likely be exposed" absent acceptance of the plea offer. *Purdy*, 208 F.3d at 44-45 (citing *Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999). "On the other hand, the ultimate decision whether to plead guilty must be made by the defendant," and a lawyer cannot "coerce a client into either accepting or rejecting a plea offer." *Id*. at 45. Recognizing the challenge of "steer[ing] a course between the Scylla of inadequate advice and the Charybdis of coercing a plea," the Second Circuit has recognized a "wide range" of what qualifies as reasonable advice pertaining to the acceptance or rejection of a plea offer. *Id*. Specifically, the Second Circuit has provided that:

> [c]ounsel rendering advice in this critical area may take into account, among other factors, the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea

9

>   (whether or not accompanied by an agreement with the government), whether the defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform his plea decision.

*Id.*

Cabrera does not dispute that Attorney Mastronardi communicated the government's plea offer and its terms, nor does he assert that Mastronardi never addressed the merits of Cabrera's case and the nature of the government's case. *See* Pet., Doc. No. 1, at 5.[5] Cabrera acknowledges that client and counsel discussed the government's plea offer, the elements of the offense that the government was required to prove at trial, and the nature of the government's evidence against him. *Id.*; *see also* Mastronardi Aff., Doc. No. 11-1, at ¶¶ 9-12.  Rather, Cabrera appears to principally take issue with Attorney Mastronardi's assessment of his case, suggesting that Mastronardi's allegedly optimistic assessment of the evidence and advice to reject the proposed plea agreement based on that assessment were objectively unreasonable.  But Cabrera's characterization of counsel's assessment of his case and conclusion that counsel's performance was constitutionally deficient is legally unsupported and undermined by the record.

First, although Cabrera cursorily asserts that Attorney Mastronardi "failed to explain the risks of going to tr[ial] and the risks of losing" at their October 22, 2017 meeting, Pet., Doc. No. 1, at 5 and Mot. to Amend, Doc. No. 5, at 1, the record reveals that Cabrera was informed of the potential disparity in sentencing after a full trial as compared to a guilty plea.  Attorney Mastronardi avers that he "spoke at length" with Cabrera about the potential sentencing exposure.  *See* Mastronardi Aff., Doc. No. 11-1, at ¶¶ 11-12.  Even if I did not credit counsel's affidavit (which I do credit), the November 7, 2017 *Frye* hearing contradicts Cabrera's suggestion that he proceeded to trial unapprised of the risks.  The Court held the *Frye* hearing to

---

[5] Cabrera's reliance on the Second Circuit's decisions *Cullen v. United States*, 194 F.3d 401 (2d Cir. 1999), and *Boria v. Keane*, 99 F.3d 492 (2d Cir. 1996), is thus misplaced.

ensure that Cabrera had "a full and accurate communication" regarding the proposed plea agreement so that Cabrera "fully understood the terms of the plea agreement that he was rejecting." *United States v. Albarran*, 943 F.3d 106, 113 & n.5 (2d Cir. 2019). In response to questioning at the *Frye* hearing, Cabrera indicated that counsel had addressed the potential for increased post-trial sentencing exposure: Cabrera confirmed for Judge Garfinkel that he had reviewed the terms of the plea agreement with Attorney Mastronardi, that he understood the proposal, and that he was satisfied with counsel's representation. *Frye* Hrg. Tr., Cr. Doc. No. 8-1, at 4-9. Furthermore, at the hearing, the government extensively reviewed the charges against Cabrera and the maximum penalties for all of the counts charged, explaining that the proposed plea agreement contemplated that Cabrera would plead guilty only to two counts of extortion and that, in consideration for Cabrera's plea, the government would drop the three kidnapping counts, "in and of itself reduc[ing] significantly the exposure of the Defendant." *Id.* at 9-15. Judge Garfinkel, after observing that the government had "very thoroughly" explained the potential sentencing exposure, questioned whether Cabrera understood the discussion regarding the government's plea offer and "the possible differences between what [Cabrera] could be subjected to under the plea agreement as opposed to what [he] could be subjected to after trial if there were convictions." *Id.* at 18-19. Cabrera affirmatively stated, "Yes, I do." *Id.* at 19. Cabrera decided to decline the plea offer even after the *Frye* hearing and its extensive review of his potential post-trial sentencing exposure.

Second, although Cabrera asserts that counsel advised him that the government's evidence was "weak" and that his case was "highly winnable," doc. no. 1 at 5, the record challenges Cabrera's characterizations of his lawyer's advice. Attorney Mastronardi states that he advised Cabrera that the case was "close" and that he "could not guarantee" that Cabrera

11

would be acquitted of all charges. Mastronardi Aff., Doc. No. 11-1 at 4. Even if Cabrera's account of Mastronardi's guidance is correct and hindsight has proven that Attorney Mastronardi's assessment of the case was overly optimistic, I cannot conclude that counsel's assessment of the government's case and ensuing advice to reject the plea offer was outside of "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. To begin, I may not assess counsel's performance based on hindsight. *Id.* at 689. Rather, I must evaluate counsel's conduct "from counsel's perspective at the time." *Id.* Facing the same considerations at that time, Cabrera's counseled codefendants Betancourt and Hernandez also decided to proceed to trial. Moreover, the trial outcome demonstrates that the government's case was neither overwhelming nor entirely sufficient, as Cabrera alleges, because Cabrera and his codefendants were in fact acquitted of several of the counts charged. Accordingly, Cabrera's conclusory reasoning fails to satisfy his burden to "overcome the presumption that, under the circumstances, the challenged action," the advice to reject the plea offer, "might be considered sound trial strategy." *Id.* at 689 (cleaned up). Neither an "erroneous strategic prediction about the outcome of a trial," without more, nor trial counsel's purportedly overly-optimistic assessment of his client's chances of prevailing at trial necessarily constitute constitutionally deficient performance. *See id.* at 174; *United States v. Belfiore*, 473 F. Supp. 3d 72, 78 (E.D.N.Y. 2020).

Importantly, Cabrera does not allege any "actionable professional lapse" on Attorney Mastronardi's part, such as a "deficient investigation" or legal error resulting in deficient advice. *Lake v. United States*, 465 F. App'x 33, 35 (2d Cir. 2012) (citations omitted); *see also Greiner*, 417 F.3d at 325 (collecting cases finding deficient performance where counsel failed to investigate the case, committed legal error, misunderstood the case, lacked common sense, or

sought to avoid extra work). The record does not suggest one. At the *Frye* hearing, the government indicated that it had provided "all" discovery to Attorney Mastronardi, and I credit Mastronardi's testimony confirming that he had shared what he learned about the nature of the evidence in the government's case and had discussed the evidence with his client "at length." *Frye* Hrg. Tr., Doc. No. 8-1, at 18; *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (providing that "[s]olemn declarations in open court carry a strong presumption of verity" and "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible"). Attorney Mastronardi avers that his pre-trial access to witnesses was limited, but not for lack of diligence; counsel repeatedly sought to compel the government to disclose the names and addresses of the victim-witnesses, but the Court held that the government did not have to do so. Mastronardi Aff., Doc. No. 11-1, at ¶ 15.

In my view, then, Cabrera's motion does little more than invite the Court to be swayed by hindsight— which is not a basis on which I can grant this motion. This Court has elsewhere advised that, "[w]ere [it] to accept [the petitioner's] contention that defense counsel provided ineffective assistance on the sole grounds that he sets forth, namely that defense counsel advised him to reject the plea agreement and that, because he followed that advice, he was subsequently sentenced to a period of incarceration longer than the Guidelines range calculated in the first plea agreement, the court would be doing exactly what *Strickland* cautions courts against: being swayed by the 'distorting effects of hindsight.'" *Oehne v. United States*, 2016 WL 10721817, at *6 (D. Conn. Oct. 20, 2016) (quoting *Strickland*, 466 U.S. at 689).

Third, I may consider counsel's performance in light of the fact that Cabrera maintained his innocence throughout the proceedings, including after the trial. *See* Presentence Investigation

13

Report, Cr. Doc. No. 14 ¶¶ 5, 39-40; Mastronardi Aff., Doc. No. 11-1, at 3 ¶ 7. In doing so, I assess counsel's performance under the presumption that Cabrera— the ultimate decisionmaker regarding whether to accept or reject the government's plea offer— wished to proceed to trial. In such circumstances, defense counsel has no duty to "arm-twist a client who maintains his innocence into pleading guilty." *United States v. Pitcher*, 559 F.3d 120, 125 (2d Cir. 2009).

Fourth, the record supports that Cabrera comprehended the plea bargain and the various factors that informed his plea decision. Cabrera now asserts that he "only spoke Spanish" and that it was "hard for him to understand English, and that there was no translator" at their two meetings. Pet., Doc. No. 1, at 3. At the *Frye* hearing, however, Cabrera indicated that he was able to follow along with the proceedings in English and that he had been able to successfully communicate with counsel. *Frye* Hrg. Tr., Doc. No. 8-1, at 8-9. Cabrera, moreover, had an interpreter present at the *Frye* hearing, an interpreter who commented on Cabrera's high level of education and strong English competency. *Id.* at 7. In addition, Attorney Mastronardi indicated that he did not have difficulty communicating with Cabrera. *Id.* at 6-7, 9.

Finally, I consider that, when asked at the *Frye* hearing, Cabrera affirmatively stated that he was he was satisfied with counsel's representation. *Id.* at 8-9.

Taken together, the objective indicia show that Attorney Mastronardi's advice was not so erroneous that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington*, 562 U.S. at 104.

2. *The prejudice prong*

Even if Cabrera had established that counsel's performance was deficient, I would still conclude that he failed to satisfy the prejudice prong of the *Strickland* analysis.

To show prejudice from ineffective assistance of counsel where a plea offer was rejected because of counsel's deficient performance, a defendant must demonstrate a reasonable probability that he would have accepted the plea offer had he been afforded effective assistance of counsel. To do so, a petitioner must (1) credibly assert that he would have accepted the plea offer, and (2) present some "objective evidence" other than his own assertions to support a finding that he would have done so. *Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011).

Here, there is sufficient evidence supporting an inference of prejudice— the four-year sentencing disparity between the Guidelines imprisonment range in the government's plea offer (70-87 months' incarceration) and Cabrera's post-verdict sentence (135 months' incarceration). *See Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (determining that a sentencing disparity roughly double the plea offer sentence evinced prejudice). On the other hand, I do not find credible Cabrera's assertion that he would have accepted the plea offer.

A defendant can demonstrate prejudice "by producing . . . a sworn affidavit or testimony stating that he would have accepted or rejected a plea agreement but for his counsel's deficient performance. . . ." *United States v. Frederick*, 526 F. App'x 91, 93 (2d Cir. 2013) (summary order). The Court assesses the credibility of the petitioner's statement based on "all relevant circumstances. *Cullen v. United States*, 194 F.3d 401, 408 (2d Cir. 1999). Cabrera asserts in the Petition that he would have accepted the government's plea offer if Attorney Mastronardi had properly advised him of his chances at trial, but I am not persuaded by his self-serving assertion that he would have accepted the government's offer had Attorney Mastronardi advised him to do so. A defendant's insistence on his innocence is a "relevant," if not dispositive factor, that a court may consider when assessing whether a defendant has demonstrated a reasonable probability that he would have pled guilty." *Cullen*, 194 F.3d at 407. As explained, although

Cabrera principally alleges through the Petition that Attorney Mastronardi inadequately apprised him of the government's "overwhelming" evidence against him, Cabrera maintained his innocence even after seeing the full scope of the government's evidence at trial.  In his presentencing interview, Cabrera continued to deny that he engaged in the conduct for which the jury had convicted him, including continuing to deny that he had kidnapped the victims and extorted their families.  Presentence Investigation Report, Cr. Doc. No. 14 ¶¶ 5, 39-40.  Said differently, even after Cabrera accessed the missing information that he alleges prevented him from making an informed decision to reject the government's plea offer, he continued to deny his involvement and claim his innocence.  Cabrera's insistence on his innocence calls into question the probability that he would have accepted the plea offer had he been apprised of that exact evidence.

Perhaps more importantly, I would not have accepted the plea agreement if Cabrera continued to deny that he committed essential elements of the offenses charged.  To state a claim for ineffective assistance of counsel arising from a declined plea offer, a petitioner must establish that the court would have accepted the plea and the terms of the plea bargain.  *Lafler*, 566 U.S. at 163-64.  But "it is error for the court to find that a factual basis [for accepting a guilty plea] exists when the defendant actively contests a fact constituting an element of the offense in the absence of circumstances warranting the conclusion that the defendant's protestations are unworthy of belief."  *United States v. Culbertson*, 670 F.3d 183, 190 (2d Cir. 2012), *as amended* (Feb. 16, 2012) (cleaned up); *see also Godwin v. United States*, 687 F.2d 585, 590–91 (2d Cir. 1982) (reversing a conviction after finding that the district court accepted the guilty plea without sufficient factual basis because the defendant's statements at the plea proceeding "essentially [denied] the intent element of the offense," and the court lacked "some basis" in the record "for

doubting his account"). Cabrera's continued denial that he committed essential elements of the offenses charged and ongoing protestation of innocence suggest that I would not have accepted the plea agreement in the first place.

Taken together, Cabrera has not shown that but for counsel's purportedly deficient performance there is a reasonable probability either he or the trial court would have accepted the guilty plea.

B. Jury instructions

Cabrera further claims, without elaboration, that Attorney Mastronardi provided ineffective assistance for failure to object to the jury instruction on kidnapping and to the sufficiency of the evidence. Pet., Doc. No. 1, at 3.

A section 2255 motion "may not relitigate issues that were raised and considered on direct appeal." *United States v. Perez*, 129 F.3d 255, 260 (2d Cir. 1997). The so-called "mandate rule" bars petitioners from re-litigating issues "already decided on direct appeal," "prevent[ing] re-litigation in the district court not only of matters expressly decided by the appellate court, but also preclud[ing] re-litigation of issues impliedly resolved by the appellate court's mandate." *Yick Man Mui v. United States*, 614 F.3d 50, 53-54 (2d Cir. July 30, 2010); *see also Burrell v. United States*, 467 F.3d 160, 165 (2d Cir. 2006); *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001).

The Petition alleges that Attorney Mastronardi's "failure to raise objections concerning the federal kidnapping jury instruction was ineffective because the evidence as insufficient to prove the elements of the crime or that fraud was a lesser charge [than] kidnapping." Pet., Doc. No. 1, at 3. That is incorrect. Attorney Mastronardi raised those arguments in Cabrera's post-conviction Rule 29 motion. *See* Cr. Docs. No. 235, 256. After this Court denied the Rule 29

motion, Cabrera raised the same arguments on appeal. *See generally* Brief of Appellant, *United States v. Betancourt (Cabrera)*, Dkt. No. 20-346, Doc. No. 97 (2d Cir. Oct. 13, 2020). The Second Circuit expressly rejected those arguments and affirmed Cabrera's conviction. Mandate, Cr. Doc. No. 427, *republished at United States v. Betancourt*, 857 F. App'x 33 (2d Cir. May 21, 2021).

Accordingly, I reject Cabrera's claims concerning the kidnapping jury instruction and the sufficiency of the evidence as barred by the Mandate Rule.

C. <u>Requests for Appointment of Counsel and Release</u>

Because Cabrera's section 2255 petition is without merit, I deny his motions for release and for the appointment of counsel.

Regarding Cabrera's request for release, this court has "limited" power to grant bail to a habeas petitioner in "special" or "unusual" circumstances, "or when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001). To obtain such relief, a petitioner generally must demonstrate that the petition "raise[s] substantial claims" and that "extraordinary circumstances . . . make the grant of bail necessary to make the habeas remedy effective." *Id*. But Cabrera's motion establishes no special or unusual or extraordinary circumstances, and for the reasons set forth in this ruling, raises no substantial claims. Accordingly, I deny his motion for bail.

Regarding Cabrera's motion for the appointment of counsel, a petitioner has no right to counsel on a section 2255 motion, and the Court only has discretion to appoint counsel if "required by 'the interests of justice.'" *United States v. Doe*, 365 F.3d 150, 155 (2d Cir. 2004) (quoting 18 U.S.C. § 3006A(a)(2)(B)). When assessing whether the interests of justice require

the appointment of counsel, the court considers "the petitioner's likelihood of success on the merits; the complexity of the legal issues raised by the petition; and the petitioner's ability to investigate and present the case." *United States v. Brown*, 2014 WL 3738062, at *6 (D. Conn. July 30, 2014) (citing *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986)).  I decline to appoint counsel because the briefs and record before the Court provide sufficient information to conclude that Cabrera's meritless ineffective assistance claim raises a straightforward allegation about his counsel's advice that requires no further investigation and is plainly without merit.

### IV.     Conclusion

Cabrera's motion for leave to supplement the Petition, doc. no. 5, is **granted**.  However, for the foregoing reasons, Cabrera's motion to vacate, set aside, or correct his sentence, doc. no. 1, lacks merit and is **denied**.

Cabrera's motion for the appointment of counsel and for release while his § 2555 motion is pending, doc. no. 6, is **denied**.

Cabrera's letter motion for status, doc. no. 10, is **denied as moot**.

Cabrera has not shown that he was denied a constitutionally or federally protected right.  Thus, any appeal from this order would not be taken in good faith and a certificate of appealability will not issue.

The Clerk is directed to close this case.

So ordered.

Dated at Bridgeport, Connecticut, this 29th day of March 2023.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge